## No. 14,637.

PEOPLE EX REL. HARPER *v.* INGLES, CITY CLERK OF
TRINIDAD.
(103 P. [2d] 475)

Decided May 20, 1940.

Mr. FRANK H. HALL, for plaintiff in error.

Mr. PHILIP HORNBEIN, Mr. NICHOLAS C. DAZZO, for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THIS cause is before us on writ of error to review a judgment of the district court of Las Animas county dismissing an alternative writ of mandamus issued to compel the respondent, as a member of the board charged with the duty of canvassing the returns of the general city election of the city of Trinidad, Colorado, held April 4, 1939, to certify the returns of precinct number 64 as to the vote cast in that precinct for city treasurer.

The relator, Minnie A. Harper, was a candidate for the office of city treasurer, for which office there was only one other candidate, Alice E. Moore. April 10, 1939, the respondent and E. E. Ash, a duly elected and qualified justice of the peace designated by the respondent, who, at said date was city clerk, acting as the canvassing board to canvass the results of said election, met for that purpose. They canvassed and certified as to the returns from all precincts for all of the city offices excepting that of city treasurer. To the abstract of votes and certificate so made the said clerk attached the following statement: "As a member of canvassing board, I refuse to certify as to the city treasurer because of apparent error and mistake in the certificate of purported returns of precinct No. 64. James Ingles, City Clerk." It appears that Ash, the other member of the board, was at all times ready and willing to canvass said vote and certify to the same in accordance with the certificates of the precinct election judges and clerks. Following such return, the relator made formal demand in writing on the respondent to canvass the votes for city treasurer and to prepare and certify an abstract of votes with reference to said office, and duly served notice of

said demand upon the respondent James Ingles at Trinidad, Colorado, on April 13, 1939. Respondent failing and refusing to comply with said demand, the relator, Minnie A. Harper, on April 18 filed a petition for a writ of mandamus to compel the respondent, as a member of the canvassing board, to canvass said votes for the office of city treasurer and to certify in accordance with the certificates by the judges and clerks of election in the precincts in the city of Trinidad, as to the votes so cast for each of the candidates for the office of city treasurer and to issue to the relator a certificate of election certifying her to be the duly elected city treasurer of the city of Trinidad, or to show cause, on a day certain to be fixed by the court, for his failure so to do. An alternative writ issued in accordance with the prayer of the petition, returnable on the first day of May following. In the petition, which was set forth in full in the alternative writ, it was alleged:

"That at the time of the said election, April 4, 1939, there were 14 voting precincts in the City of Trinidad, Colorado; and the judges of election and the clerks of election in each and every one of said precincts duly certified as to the number of votes that each and every candidate had received at said election and the certificates of said judges and clerks showed that the relator had received a total of 2,863 votes for said office of City Treasurer and that the relators opponent, Alice E. Moore, had received at said election a total of 2,862 votes for said office and that said election judges did on the evening of said April 4, 1939, turn over and deliver to the respondent, James Ingles, the ballot boxes, poll books, tally sheets, and certificates of votes cast for each candidate at said City election."

In respondent's answer to the writ he "Denies that the judges and clerks duly and properly certified that the relator herein had received 2,863 votes and Alice E. Moore 2,862 votes, but on the contrary alleges that the true certification of the judges and clerks showed that

the said Alice E. Moore had received a greater number of votes than the relator." Respondent admitted that he refused to certify the vote for the office of city treasurer for the reason that such a certification would have been false for the following reasons: "That in Precinct No. 64 the certificate and return of the judges, transmitted to the respondent, showed that relator, Minnie A. Harper, had received 299 votes and Alice E. Moore 209, but respondent is informed and verily believes that said certificate is erroneous, for the reason that the abstract of the count of votes, which was posted by the judges in a conspicuous place on the outside of the polling place immediately upon completion of the count, showed that the relator had only received 225 votes and Alice E. Moore 209 votes, and further, that the tally marks contained in the official returns certified by the judges and clerks showed that the relator had received only 225 votes and Alice E. Moore 209 votes, and that the poll book for said precinct, which was transmitted to the respondent by the judges and clerks, showed that the total vote cast in said precinct was 446, and that the returns certified by the judges and clerks to the respondent were at complete variance with the abstract posted in front of the polling place at the completion of the count, the poll books showing the total number of votes cast and the tally marks. That the vote set forth in the abstract posted in front of the polling place showed that the total vote for the office of City Treasurer was 434, whereas, the vote in the returns certified to the respondent shows a total vote of 508 for treasurer, which would be 62 votes more than all electors voting in said precinct. That on account of said discrepancy this respondent could not, without violating his oath of office, make the certification demanded by the relator."

The relator filed no reply to the answer. In a conference with the attorneys at the beginning of the trial the court called attention to the fact that no replication had

been filed and stated that he assumed the relator intended to deny the allegations of the answer, whereupon the relator made the following statement in open court: "Nothing could be further from the truth. When I elected to file no reply, I think it necessarily follows that I admit the allegations of the answer. * * * I intend to offer evidence to what has been made an issue of fact, by virtue of the second paragraph in the first defense. And I intend to offer evidence on nothing else. That is the allegation in which it is denied, they deny the allegation in our complaint, 'that the judges and clerks duly and properly certified that the relator herein had received 2,863 votes and Alice E. Moore 2,862 votes, but on the contrary alleges that the true certification of the judges and clerks showed that the said Alice E. Moore had received a greater number of votes than the relator.' I want to offer evidence as to what those judges did certify to. That seems to have been made an issue; it needn't have been. We allege in our complaint that the election judges did a certain thing; they come in and deny it, which makes an issue of fact; and that is the only issue of fact in the case, as I see it."

The relator then called the respondent Ingles for cross-examination and had him produce and identify the returns of the judges from precinct number 64. It appears from the record that according to the certificate of the judges contained in their return the relator received *299* votes and Alice E. Moore received 209 votes in precinct 64. It appears also that in the thirteen precincts other than 64 the relator had received 2,564 votes and Alice E. Moore 2,653 votes. It follows, therefore, that a return of the canvassing board for precinct 64 showing that relator had received 299 votes and Alice E. Moore 209 votes would entitle the relator to a certificate of election, but that a return of the canvassing board that the relator had received 225 votes, as shown by the abstract posted outside the polling place, and that Alice E. Moore had received 209 votes, the sum of these two

being less than the total number of 446 votes cast in the precinct, would have entitled Alice E. Moore to a certificate of election. Having shown the foregoing facts the relator rested.

The respondent, over objection that their testimony was not pertinent to any issue raised by the pleadings, introduced the testimony of the three judges and two clerks of election in precinct 64, which disclosed that the certificate of the judges · was wrong and that the abstract prepared and posted outside the polling place showing 225 votes for Harper and 209 for Moore was correct; that the certificate that Harper had received 299 votes was an error. All said they were willing to correct it if they had the right under the law. Respondent further testified in his own behalf that when he was advised of the error he served a notice on the judges and clerks of precinct 64 required by section 260, chapter 59, '35 C.S.A., to correct the error and that they, or one or more of them, doubting their authority to correct it, had failed to do so.

In this state of the record the trial judge refused to direct the respondent to canvass the vote as returned by the certificate of the judges showing 299 votes cast in precinct 64 for Harper and to issue a certificate of election to her. The order dismissing the alternative writ was entered on May 23, 1939.

 Relator, by failing to reply, admitted the allegations of the answer that the judges had made a certificate not in accordance with the facts. The number of votes for Harper in precinct 64, as shown by the tallies and figures in the poll book and by the abstract of votes contemporaneously prepared and posted outside the polling place as one of the duties of the election board of precinct 64 under section 261, chapter 59, '35 C.S.A., showed that Harper received 225 votes and not 299 votes. 225 votes for Harper added to the 209 received by Moore gives a total of 434 votes, 12 less than the total of 446 voting in the precinct. If the number

certified, 299, for Harper be added to the 209 for Moore the total exceeds by 62 the total number of votes cast in precinct 64. Independently of the testimony of the clerks and judges, we think the record discloses a clear case of a clerical mistake in the certificate which the judges and clerks, when they were notified of the error by the respondent, had a right to correct and should have corrected under authority of section 260, chapter 59, '35 C.S.A., supra.

The three Colorado cases upon which counsel for plaintiff in error principally relies are *People ex rel. v. Tool,* 35 Colo. 225, 86 Pac. 224; *People ex rel. v. White,* 88 Colo. 229, 294 Pac. 535; *Leary v. Jones,* 51 Colo. 185, 116 Pac. 130. These cases involve situations materially differing from that in the case at bar and are not controlling.

From an order of the district court in a case other than the one before us, which is attached to the record and bill of exceptions, and from the statement of relator in her brief that the poll book, introduced in evidence as an exhibit, had been changed as to the number of votes cast for Harper from 299 to 225, we gather that the city clerk, as relator in another mandamus suit directed against the said judges and clerks of precinct 64 as respondents, procured the clerical error to be corrected.

Relator, in her petition, asked the court to direct the respondent to certify the result of the canvass as it would be if 299 votes were cast in precinct 64 for relator. But she admitted, by failing to deny the allegations of the respondent's answer, that a certificate showing 299 votes cast for Harper was an incorrect return by the judges, and, by necessary inference, she admitted that a canvass of the votes and a certificate of election issued to Harper on the basis of such return— which she asks that the clerk be directed to issue on such basis—would be affected with the same error.

■■ Relator may be, and probably is, entitled to have a certificate from the respondent giving the vote cast for the candidates for city treasurer and a certificate as to who was elected. It does not follow that she has a clear legal right to the particular certificate she seeks, based on the number of votes cast as shown by a certificate of the judges which, by reason of a clerical error, admittedly does not speak the truth; nor to a certificate that she was elected, based on such a canvas of the votes. Where a specific action is sought to be compelled by mandamus, as here, there must be a clear legal right to have that specific action taken. *Civil Service Commission v. People ex rel.,* 88 Colo. 319, 295 Pac. 920. If there is any discretion as to the taking or not taking of the action, or if the one sought to be compelled to act has a lawful right to require precedent action by another before acting himself, there is not a clear case of a legal right in the relator to have the action taken until there is a showing that such precedent action has been taken. This is what relator seeks to have done. Upon the record presented to us it was not error for the trial court to dismiss the alternative writ.

MR. JUSTICE FRANCIS E. BOUCK and MR. JUSTICE BAKKE concur.