No. 14,919.

GETTY AND OTHERS AS COMMISSIONERS OF THE STATE CIVIL SERVICE COMMISSION ET AL. *v.* WITTER ET AL.

(111 P. [2d] 636)

Decided March 10, 1941.

Mr. BYRON G. ROGERS, Attorney General, Mr. JOSEPH B. ISKOW, Assistant, Mr. GAIL L. IRELAND, Attorney General, Mr. THEODORE A. CHISHOLM, Assistant, Mr. DONALD H. MEYER, Assistant, Mr. ERNEST LEE WILLIAMS, for plaintiffs in error.

Mr. A. D. QUAINTANCE, for defendants in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THIS is a proceeding in mandamus, brought by defendants in error, to whom we hereinafter refer as relators, or by name, against plaintiffs in error, hereinafter designated as respondents, or as "commission," and "board," respectively, when specific reference is made to the Civil Service Commission, and to the board of control of the State Industrial School for Boys at Golden, Colorado. The writ was issued on behalf of relators "and others similarly situated." Oral argument having been had herein, we dispose of this case on application for supersedeas.

The objective sought in procuring the issuance of the writ was: (a) To cancel an examination held by the commission pursuant to notice given October 6, 1939, for positions at the State Industrial School; (b) to cancel and annul any and all eligible lists for positions at said school established pursuant to an examina-

tion held December 4, 1939; (c) to compel the commission to give notice for and hold a non-assembled examination for said positions upon a basis given to applicants of somewhat similar institutions.

Briefly stated, the facts are: October 6, 1939, the commission gave notice of examinations for positions at the following state institutions: the Colorado State Hospital at Pueblo, Homes and Training Schools for Mental Defectives at Ridge and Grand Junction, the Soldiers and Sailors Home at Monte Vista, State Home for Dependent and Neglected Children at Denver, the Girls Industrial School at Morrison, and the State Industrial School for Boys at Golden. Pursuant to said notice the commission held non-assembled or oral examinations for positions at all of these institutions except for positions at the State Industrial School for Boys, for which an assembled and written examination was given December 4, 1939. Applicants who took the non-assembled or oral examination were graded on the following basis:

| | |
|---|---|
| Experience | 50% |
| Education and Training | 25% |
| Oral Examination | 25% |
| Total | 100% |

Applicants who took the assembled or written examination for positions at the State Industrial School for Boys were graded on the following basis:

| | |
|---|---|
| Written Examination | 40% |
| Training and Experience | 30% |
| Oral Examination | 30% |
| Total | 100% |

It was also provided in the rules concerning the examination for industrial school positions that employees would not be permitted to take an oral examination unless they attained a grade of seventy per cent or more in the written examination. Relators E. N. Witter,

T. P. Price and H. B. Smith, who had been employed at the industrial school for a number of years, took this written examination, but, failing to attain the required grade of seventy per cent or more, no oral examination was given them, and they were not certified to the board as being on the eligible list. The trial court found that the commission abused its discretion in not giving them a non-assembled examination in the same manner as that given to applicants in the other named institutions; also finding that there "is no difference, in a general way, between the employees of the various institutions." On these findings it adjudged that the alternative writ be made peremptory.

■ ■ The ultimate question for our determination is whether the assembled examination, pursuant to the notice of October 6, 1939, was valid; if it was, all remaining issues raised require no discussion. The trial court rightly stated in its opinion, that "from a legal standpoint, the relators are temporary appointees," and "there is no question but what the board [commission] has the discretion as to the method of testing applicants for positions and that this discretion is one that cannot be inquired into by the court." It being apparent that we here are dealing with discretionary power of the commission, the controlling questions are: Is there a clear legal right on the part of relators to compel the commission by mandamus to give them a non-assembled examination, and to cancel the results of the examination held December 4, 1939? And is there a clear legal duty resting upon the commission to give such an examination? Unless there is, mandamus will not lie. 38 C.J., p. 600, §75; 18 R.C.L., p. 128, §41. See, also, *Civil Service Commission v. People ex rel.*, 88 Colo. 319, 295 Pac. 920; *People ex rel. v. Ingles*, 106 Colo. 213, 103 P. (2d) 475. In the case of *State Board v. Denver*, 61 Colo. 266 (156 Pac. 1100), we quoted with approval section 34 from High's Extraordinary Legal Remedies, as follows: "An important distinction to be observed in

the outset, and which will more fully appear hereafter, is that between duties which are peremptory and absolute, and hence merely ministerial in their nature, and those which involve the exercise of some degree of official discretion and judgment upon the part of the officers charged with their performance. As regards the latter class of duties, concerning which the officer is vested with discretionary powers, while the writ may properly command him to act, or may set him in motion, it will not further control or interfere with his action, nor will it direct him to act in any specific manner." Continuing, Mr. High says: "But as to the former class of cases, where mandamus is sought to compel the performance of a plain and unqualified duty, concerning which the officer is vested with no discretion, a specific act or duty being by law required of him, the writ will command the doing of the very act itself."

■■ The assembled examination given to relators, as applicants for positions with the industrial school, was not of judicial concern, unless the discretion of the commission was restricted by the Constitution. It is contended by relators that such a restriction exists in the third paragraph of article XII, section 13, thereof, the clause in question reading as follows: "Persons in the classified service shall hold their respective positions during efficient service and shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties." We held in *Wilson v. People ex rel.,* 71 Colo. 456, 458 (208 Pac. 479), that provisional employees in the service of the state, such as relators here, are not persons "in the classified service" within the meaning of said clause in section 13 of article XII, supra. This being so, there is absent "a clear legal duty" on the part of the commission to give provisional employees the same examination "for all persons having like duties." Where the commission acts arbitrarily, as in the discharge of one in the classified service, without any

basis therefor in fact, as disclosed after a hearing, its actions are subject to judicial review without the aid of mandamus. *Civil Service Commission v. Hoag,* 88 Colo. 169, 293 Pac. 338. Discretion to administer the provisions of the civil service law necessarily must be lodged somewhere. Our Constitution places this responsibility in the commission. Whether its administration is good or bad, is generally not a judicial, but an executive, problem. True, the Constitution provides that the personnel of the commission "shall be persons of known devotion to the merit system," but whether they are such is solely a question for the appointing power. There are some matters which those clothed with executive and administrative power alone can correct. Eventually everything functions through human beings, and unless those who have the responsibility function properly and efficiently, maladjustments in governmental processes occur, most of which do not come under judicial control. *McKay v. Utilities Commission,* 104 Colo. 402, 423, 91 P. (2d) 965. A law may be so administered as to make it impotent.

██ Relators allege that they have been provisional employees for a number of years and no examination for the positions which they occupy ever was held until December 4, 1939. However this may be, it is not involved in any issue now before us, as it would be if this were an action in mandamus to compel the commission to give a specific examination, especially where none ever has been held. Here we are not concerned with a refusal to act, but with the manner in which the commission has acted. In that field it is presumed that the commission has comprehensive experience and knowledge and therefore is vested with wide discretion, and only when its exercise of power clearly is arbitrary and capricious can there be judicial interference. In our opinion, there was in the present case no such arbitrary or capricious action. That the industrial school, apparently, is in a different class than the other institu-

tions named appears from the opinion of the trial court, wherein it said: "For a number of years it has been a matter of public knowledge that the Industrial School for Boys had difficulties about its management." The lower court was not warranted, under the law or presented facts, in ordering the commission to give an examination to relators "commonly given to all other employees," nor in invalidating the examination in which relators participated December 4, 1939, and which they failed to pass.

■ There is another phase of this proceeding that requires consideration. After the writ of error was sued out in this court counsel for relators filed in the district court what he designates as a "Motion for Injunction" on behalf of certain petitioners; namely A. B. Thomas, W. A. Hopkins and A. E. Corfman, alleged to be similarly situated as the relators. Unlike relators, they took the examination for positions at the industrial school December 4, 1939, passed, and were properly certified to the board as eligible. *Roberts v. People ex rel.,* 81 Colo. 338, 255 Pac. 461. In view of our conclusions, it must be apparent that they are not "similarly situated"; they are on the eligible list issued pursuant to the assembled examination. The motion for injunction should have been denied.

The judgment and orders of the district court are reversed and the case remanded with directions to discharge the writ and dismiss the petition.