NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FREDERICO A., | ) | |
| | ) | Supreme Court No. S-15677 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-12-01570 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| FRANCISCA A., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1607 – December 28, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Frederico A., pro se, Fairbanks, Appellant. Melony P. Lockwood, Alaska Legal Services Corporation, Fairbanks, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.   INTRODUCTION

This appeal arises from a custody case in which a father of four minor children was found to have a history of domestic violence and the mother was granted sole physical and legal custody of the children. The father appeals the court's custody determination and argues that the superior court: (1) made erroneous findings of fact regarding domestic violence; (2) failed to enforce its order that he have supervised

_____

[*]     Entered under Alaska Appellate Rule 214.

visitation with his children; (3) erred in its imputation of income and child support determination; (4) erroneously admitted and excluded evidence; (5) violated his procedural rights throughout the proceedings; and (6) was motivated in its rulings by improper bias against him. We affirm the superior court's decision in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

Frederico A. and Francisca A.[1] were married in 1991. They have six children together: two adult daughters and four minor children. In April 2011 Francisca and her two adult daughters moved into a women's shelter. From then until October 2011 Francisca and Frederico shared custody of the minor children on an alternating two-week schedule. In April 2012 Francisca filed for divorce and sought interim custody of the minor children, alleging that Frederico had physically abused her and that she had not seen her children since September 2011, when Frederico came to pick them up at the shelter and did not return them.

Frederico opposed Francisca's motion for interim custody and requested sole physical and legal custody of the children. He denied Francisca's domestic violence allegations, and also asserted that Francisca had abused the children while she was living at the shelter. He further alleged that Francisca had abandoned the children after he picked them up from the shelter in September 2011 and that she had made no efforts to see the children since then.

In July 2012 Francisca filed a motion for visitation, requesting that the four younger children be allowed to visit with one of their adult sisters. In affidavits supporting the motion Francisca and her daughter both stated that Frederico had not

---

[1] We use initials in lieu of the parties' last names to protect the family's privacy.

allowed either of them to see the children in ten months. In a hearing on the motion, Francisca was represented by counsel and Frederico was self-represented. The court heard conflicting testimony about domestic violence from both parents' witnesses: Francisca's adult daughter and a friend of Frederico's.

The superior court ordered unsupervised visitation for the parties' adult daughter, finding that her testimony was more persuasive than that of Frederico's witness. The court also noted its concern about a "serious and severe history of domestic violence" on Frederico's part.

## B. Proceedings

### 1. Interim custody hearing and subsequent hearings

The court held an interim custody hearing two weeks later. Because Frederico was still self-represented the court warned him of the risk that the domestic violence presumption[2] could be applied against him based on the testimony presented at the visitation hearing and urged him to hire an attorney.

Francisca testified at length, detailing multiple incidents of domestic violence. She estimated that there had been at least 100 incidents over their 20-year relationship. Frederico denied all of Francisca's allegations. He testified that Francisca was violent and that she was lying to get revenge against him.

The court found that Francisca's and her daughter's testimony established a "lifetime of severe domestic violence" committed against them. The court found Frederico's "bald denial" unpersuasive and found the domestic violence presumption applied against him. The court therefore awarded Francisca sole legal and physical interim custody. Due to the domestic violence presumption, Frederico was allowed

---

[2]     *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded . . . custody of a child.").

supervised visitation conditioned on enrollment in a batterers' intervention program and a parenting program, proof of which would have to be presented to the visitation supervisors before the first visit. The court also ordered a child custody investigation.

About 17 months passed between the interim custody hearing and the beginning of the final custody trial. In that time Frederico asked for and received the appointment of *Flores* counsel,[3] obtained a continuance so his new attorney could prepare for trial, received another continuance after disclosing that he had filed for bankruptcy, dismissed his attorney, and then obtained another continuance because he was again self-represented. In December 2013 he filed a motion to hold Francisca in contempt of court alleging that she had denied him visitation with the children, and the court agreed to hear evidence on the matter during the custody trial. Nine days before the trial was to begin, Frederico announced that he had hired another attorney, who would require a 60-day continuance to prepare for the proceedings. The court denied Frederico's motion to continue "in the interest of bringing permanency to the family," and trial commenced in January 2014.

### 2. Trial

Frederico testified at trial that he had not been able to satisfy the court's visitation requirements due to financial difficulties, some of which he claimed had been caused by Francisca's failure to provide for the children when he took care of them. He denied Francisca's domestic violence allegations. He attempted to introduce audio

---

[3] In *Flores v. Flores* we held that an indigent party in a child custody dispute must be provided counsel when the other party "is represented by counsel provided by a public agency." 598 P.2d 893, 896 n.12 (Alaska 1979). The superior court granted Frederico's request for counsel despite his failure to submit the required application materials and what the court described as "considerable questions" regarding whether he was financially qualified.

recordings of his children supporting his position. The court allowed him to submit the recordings after trial with briefing from both parties as to their admissibility.

Frederico called five witnesses: Dr. Lawrence Gooding, a professional counselor who had conducted an anger assessment for Frederico in December 2013; an employee of the Alaska Department of Health and Human Services, Division of Public Assistance Fraud Control Unit, who had investigated Francisca for possible public assistance fraud in 2012; a former employee who provided childcare to the four minor children while they were in Frederico's custody; and two friends. Francisca testified on her own behalf and called three other witnesses: Frederico, the child custody investigator, and one of her adult daughters.

Francisca denied Frederico's domestic violence allegations. She reported that the children were doing well with her, and that she would like to move to Massachusetts with the children to join her adult daughters who were stationed there.

The parties' adult daughter testified by telephone from Massachusetts. She explained again how Frederico abused her and her mother and that her younger siblings seemed to be doing well in her mother's care.

### 3.	The superior court's findings of fact and conclusions of law

In August 2014 the superior court issued its findings of fact and conclusions of law. The court considered all testimony and evidence presented at trial and earlier proceedings as well as the evidence submitted post-trial by the parties. The court found that Frederico had failed to overcome the domestic violence presumption and reaffirmed its previous domestic violence findings. The court found the testimony of Francisca and her daughter convincing; it found Frederico's to be "less persuasive." The court did not find sufficient credible evidence to support a finding that Francisca had a history of domestic violence.

The court found that both parents could meet the physical needs of the children and that strong bonds of love and affection existed between both parents and the children. But in light of Frederico's history of domestic violence, it ruled that Francisca was better able to meet the children's emotional and social needs and to foster a relationship between the children and their father.

The court found that even if Frederico had overcome the domestic violence presumption, it would still have awarded primary physical custody to Francisca because it was in the best interests of the children. It also found that Francisca's plan to move out of the state with the children was a decision made in good faith and not for the purpose of depriving Frederico of a relationship with the children. Finally, the court ordered that Frederico could have supervised visitation with the children once he was enrolled and fully participating in a batterers' intervention program and a parenting class.

The court did not credit Frederico's testimony that he could not afford a batterers' intervention program. It concluded that his inability to visit the children stemmed from his own failure to complete the court-ordered requirements.

With respect to Frederico's financial circumstances, the court found that he was voluntarily underemployed and that he had quit his business to disrupt the family. The court found that Frederico could, "at a minimum," earn $15 per hour for 40 hours per week, and the court imputed income to Frederico for child support purposes accordingly.

Frederico now appeals, representing himself.

## III.  DISCUSSION

### A.  The Superior Court Did Not Err When It Found That Frederico Had A History Of Domestic Violence And Francisca Did Not.

Frederico mainly challenges the superior court's decision to grant sole legal and primary physical custody of the four minor children to Francisca. He argues that the

court erred by applying the domestic violence presumption against him and not Francisca, and by crediting Francisca's and her daughter's testimony over his own.

We hold that the superior court did not err in this respect. Alaska courts have the authority to "make, modify, or vacate an order for the custody of or visitation with" minor children whose parents are going through divorce or legal separation proceedings.[4] In making such orders courts must ordinarily consider several statutory factors to determine the best interests of the child.[5] But subsection (g) of the operative statute provides "a rebuttable presumption that a parent who has a history of perpetrating domestic violence . . . may not be awarded . . . custody of a child."[6]

"Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[7] "A factual finding is clearly erroneous when review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[8] "We give 'particular deference' to the court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[9]

---

[4]     AS 25.24.150(a).

[5]     AS 25.24.150(c)(1)-(9).

[6]     AS 25.24.150(g).

[7]     *Faye H. v. James B.*, 348 P.3d 876, 878 (Alaska 2015) (quoting *Yelena R. v. George R.*, 326 P.3d 989, 998 (Alaska 2014)).

[8]     *Id.* (quoting *Frackman v. Enzor*, 327 P.3d 878, 882 (Alaska 2014)).

[9]     *Nancy M. v. John M.*, 308 P.3d 1130, 1133 (Alaska 2013) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

This standard of review precludes us from ruling in Frederico's favor here. The superior court believed Francisca and her witnesses, and it did not believe Frederico and his witnesses.[10] This was an appropriate exercise of its authority. Frederico's denial of Francisca's and her daughter's descriptions of "a lifetime of severe domestic violence" does not require the court to agree with him.[11]

Although Frederico contends that the superior court "never considered" the testimony of his witnesses or the statements on the audio recordings that he submitted after trial, the court explained that it had. It was not required to make specific findings as to each piece of evidence presented at trial.[12]

---

[10] Frederico argues that the superior court failed to admit an Office of Children's Services (OCS) report made in response to allegations of abuse that Frederico had leveled against Francisca while the interim custody hearing was pending. He also argues that the court should have excluded a 2010 domestic violence protective order issued against him by his adult daughter. A party appealing the erroneous admission or exclusion of evidence "must show that the error was harmful or prejudicial before we will reverse the trial court." *Cooper v. Thompson*, 353 P.3d 782, 786 (Alaska 2015) (citation omitted). Assuming for the sake of argument that the superior court's decisions were error, Frederico has not shown that they were prejudicial to his case. Ample testimony supported the court's domestic violence finding apart from the protective order, and Frederico's own characterization of the OCS report does not explain how it would have bolstered his case. We have no reason to believe that these evidentiary decisions were prejudicial to Frederico, and therefore decline to reverse these evidentiary rulings.

[11] *See Purcella v. Olive Kathryn Purcella Tr.*, 325 P.3d 987, 992 (Alaska 2014) ("[T]he fact that Kathryn's testimony contradicted the testimony of these other witnesses is not a sufficient basis for finding clear error.").

[12] *See Chase v. Chase*, 109 P.3d 942, 946 (Alaska 2005) ("The trial court is under no obligation to make specific findings regarding the [custody investigator's] report as long as the court considers the appropriate statutory factors when making custody determinations.").

Frederico essentially argues that the superior court believed the wrong witnesses. Such allegations are not a sufficient basis for reversing a superior court's custody decision. We therefore hold that the superior court's determination that the domestic violence presumption of AS 25.24.150(g) applied to Frederico was not clearly erroneous, and we hold the same for the superior court's decision not to apply the presumption against Francisca.[13]

**B.     The Superior Court Did Not Err In Finding That Frederico Had Not Completed The Requirements For Supervised Visitation.**

Frederico also challenges the court's finding that his inability to visit with his children was due to his own refusal to timely participate in a batterers' intervention program and the required parenting class, and not due to Francisca's violation of the court's order. The superior court repeatedly advised Frederico that Francisca had no obligation to allow visitation until he provided proof of participation in both the batterers' intervention program and the parenting course. But Frederico never completed a batterers' intervention program and at trial admitted that he was not currently participating in one. As the court explained, the operative statute does not allow supervised visitation for a parent with "a history of perpetrating domestic violence," unless that parent satisfies the condition of "*participating in and successfully completing an intervention program for batterers.*"[14] It was therefore not error for the superior court to deny Frederico's motion.

---

[13]     Frederico argues that the superior court erred in its determination that sole legal and primary physical custody for Francisca was in the children's best interests. Because the domestic violence presumption prevents Frederico from obtaining any type of custody, we do not reach the superior court's best interests determination. *See Wee v. Eggener*, 225 P.3d 1120, 1125 (Alaska 2010).

[14]     AS 25.24.150(j) (emphasis added).

The superior court retains jurisdiction over custody in this case; in its findings of fact and conclusions of law the court noted that visitation would continue to depend on Frederico providing "proof of enrollment and active participation in both [batterers' intervention and parenting] programs." Because there is no evidence in the record that he has done so, we affirm the superior court's ruling.

**C.**     **The Superior Court Did Not Err In Imputing Income To Frederico To Calculate His Child Support Obligation**.

Frederico challenges the superior court's findings regarding his financial circumstances, arguing that the court erroneously found that Frederico was voluntarily underemployed. His challenge again amounts to a disagreement with the court's credibility-based fact findings.

Superior court determinations to impute income will be set aside only if clearly erroneous.[15] Under Alaska Civil Rule 90.3(a)(4) a superior court "may calculate child support based on a determination of the potential income of a parent who voluntarily and unreasonably is unemployed or underemployed."[16] We have held that the aim of this rule "is to give courts broad discretion to impute income based on realistic estimates of earning potential in cases of voluntary and unreasonable unemployment and underemployment."[17]

Although the court "accept[ed] that there were financial troubles with [Frederico's] restaurant," it found, based on Frederico's intelligence and experience running his own restaurant, that he could earn a minimum of $15 per hour at 40 hours

---

[15]     *Ward v. Urling*, 167 P.3d 48, 52 (Alaska 2007) (citations omitted).

[16]     Alaska R. Civ. P. 90.3(a)(4).

[17]     *Sharpe v. Sharpe*, 366 P.3d 66, 69 (Alaska 2016) (emphasis omitted) (quoting *Beaudoin v. Beaudoin*, 24 P.3d 523, 530 (Alaska 2001)).

per week in the restaurant and hospitality industry. This amounted to an adjusted annual income of $26,681 and a child support award of $800 per month.[18] Given Frederico's background owning and managing two restaurants, the superior court's decision to impute income to Frederico was not clear error.[19]

**D.     The Superior Court Did Not Deny Frederico Due Process**.

Frederico raises many procedural due process complaints against the superior court. We do not find that any of them have merit.

**1.     Frederico's challenge to the superior court's consideration of testimony from the visitation hearing at his interim custody hearing is moot**.

Frederico argues that the court violated his due process rights by not notifying him at the interim custody hearing that it would consider his daughter's testimony about his domestic violence from the visitation hearing held two weeks earlier. This issue is moot as his daughter testified to the same effect at the final custody hearing, with notice given to Frederico beforehand and with ample opportunity for cross-examination. Even assuming Frederico's argument is correct, a ruling in his favor on this interim custody issue would afford him no relief from the final custody order which he now appeals.[20]

---

[18]     *See* Alaska R. Civ. P. 90.3(a)(1), (2).

[19]     Frederico summarily argues that he is "entitled to backed up child support." But because "conclusory briefing . . . warrant[s] a finding of abandonment," Frederico's argument is not preserved. *See Sykes v. Melba Creek Mining*, 952 P.2d 1164, 1171 (Alaska 1998) (first citing *Hitt v. J.B. Coghill, Inc.*, 641 P.2d 211, 213 n.4 (Alaska 1982); then citing *Legge v. Greig*, 880 P.2d 606, 609 (Alaska 1994)).

[20]     *See R.I. v. C.C.*, 9 P.3d 274, 278 (Alaska 2000).

## 2. The superior court did not improperly deny Frederico access to counsel.

Frederico similarly argues that he was "unable to properly defend himself" at the interim custody hearing because of lack of counsel, and that the court failed to advise him of his right to counsel under *Flores v. Flores*.[21]  Although it is true that the court did not advise Frederico of his *Flores* rights at the interim custody hearing, the court remedied any error on this point when it appointed him counsel in May 2013.

Furthermore, at the start of the interim custody hearing the court informed Frederico of the high stakes involved and the risks of proceeding without counsel, and asked him if he had considered consulting an attorney.  Frederico responded, "I have, many times, yes," and elected to proceed.  There was no error in allowing Frederico to be self-represented at the interim custody hearing.

## 3. The superior court did not abuse its discretion in denying Frederico's final motion for continuance.

Frederico argues that he was unprepared for the final custody trial because the superior court denied a request for continuance that he made nine days before the trial began.  We review denial of a continuance for abuse of discretion, and will reverse only "when a party has been deprived of a substantial right or seriously prejudiced" by that denial.[22]  We have further stated that "when new counsel is engaged just prior to the trial date, the alleged lack of preparation on the part of such counsel is not necessarily a

---

[21]     598 P.2d 893, 896 n.12 (Alaska 1979).

[22]     *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (quoting *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011)).

ground for continuance"[23] and that "[p]rejudice resulting from a party's lack of diligence in securing an attorney does not afford a basis to obtain a continuance."[24]

Frederico provided no reason for his delay in obtaining counsel after requesting the dismissal of his *Flores* attorney in November 2013. The court had repeatedly emphasized to the parties that the slow-moving nature of the case, caused in large part by Frederico's delays, jeopardized the best interests of the children and the integrity of the proceedings. Given the circumstances of the case, Frederico's repeated attempts to delay the proceedings, and his decision to dismiss his *Flores* attorney two months before trial was to begin, we hold that the superior court did not abuse its discretion by denying the continuance.

### 4. The superior court did not err in denying Frederico's request for an evidentiary hearing.

Frederico also argues that he was entitled to an evidentiary hearing to contest Francisca's "allegations of abuse," and that he had moved for such a hearing shortly before the custody trial began. "We use our independent judgment to decide whether it was error not to hold an evidentiary hearing."[25]

The five-day custody trial was devoted in large part to Francisca's and her daughter's allegations of abuse, as well as Frederico's attempts to rebut the same. It is unclear how an evidentiary hearing could have provided Frederico with a better opportunity to contest Francisca's allegations than the trial itself afforded. We therefore hold that the court did not err on this point.

---

[23] *Shooshanian v. Dire*, 237 P.3d 618, 623 (Alaska 2010) (quoting *Siggelkow v. Siggelkow*, 643 P.2d 985, 987 (Alaska 1982)).

[24] *Id.* at 624 (alteration in original) (quoting *Siggelkow*, 643 P.2d at 988).

[25] *Routh v. Andreassen*, 19 P.3d 593, 595 (Alaska 2001) (citing *Adrian v. Adrian*, 838 P.2d 808, 811 (Alaska 1992)).

**E.** **Neither The Superior Court's Rulings Nor Its Conduct Demonstrated Bias Against Frederico**.

Frederico finally argues that it was error for the superior court judge not to recuse himself from the case in response to Frederico's motion for reconsideration of the interim custody hearing, and that the court's adverse rulings were a result of unfair prejudice against him. "To prove a claim of judicial bias, the claimant must show that the judge formed an opinion of [him] from extrajudicial sources, resulting in an opinion other than on the merits."[26]

Frederico has not shown that the superior court was improperly biased against him. Frederico is dissatisfied with the court's rulings outlined above, but "judicial bias should not be inferred merely from adverse rulings."[27] Frederico also alleges that judicial bias can be found in the court's discussion of his bankruptcy proceeding and argues that the court "went outside its jurisdiction" and "improperly offer[ed] advice to the opposing counsel about the bankruptcy case." But review of the discussion in question reveals that the court was merely inquiring into the bankruptcy's procedural effect on the division of marital property that would later be necessary in the divorce proceedings before it. Frederico also alleges that the presiding judge's former law firm once represented Francisca in another matter, but acknowledges that this allegation "was not brought before the [superior] court," and cites no evidence in support of his assertion. Given the lack of support in the record for Frederico's claim that the judge was biased against him, the judge's failure to recuse himself was not an abuse of discretion.

---

[26] *Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011) (citing *Peterson v. Ek*, 93 P.3d 458, 467 n.20 (Alaska 2004)).

[27] *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011) (quoting *Tillmon v. Tillmon*, 189 P.3d 1022, 1027 n.13 (Alaska 2008)).

## IV. CONCLUSION

We AFFIRM the superior court's rulings in their entirety.